**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RICHARD SHARIF, | ) |
| | ) Case No. 15-cv-10694 |
| Debtor. | ) |
| _____ | ) Judge Robert M. Dow, Jr. |
| | ) |
| HAIFA SHARIFEH, | ) |
| | ) |
| Intervenor-Appellant, | ) On appeal from the U.S. Bankruptcy Court |
| | ) for the Northern District of Illinois, |
| v. | ) Eastern Division |
| | ) |
| Horace Fox, Jr., in his capacity as the | ) Bankr. Case No. 09-BK-05868 |
| Chapter 7 Trustee of Debtor's Estate, | ) |
| | ) |
| Appellee. | ) |

**MEMORANDUM OPINION AND ORDER**

This case is on appeal from the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Case No. 09-B-05868. Intevenor-Appellant Haifa Sharifeh a/k/a Haifa Kaj ("Intervenor"),[1] purportedly as executrix of the Estate of her mother, Soad Wattar, appeals from two orders entered by the Bankruptcy Court on November 25, 2015: (1) an order denying Intervenor's motion to recuse Bankruptcy Judge Cox [5-1]; and (2) an order denying Intervenor's motion to vacate the Bankruptcy Court's August 5, 2010 turnover order [5-2]. On appeal, Intervenor argues that Judge Cox should have recused herself from the bankruptcy case because she is biased and prejudiced against Appellant's attorney, Maurice Salem ("Salem"), on account of her decision to sanction Salem in an earlier, unrelated bankruptcy case for failing to follow court orders. Appellant also argues that the Bankruptcy Court should have vacated its August 5, 2010 turnover order for lack of personal jurisdiction. According to Appellant, the order directed the turnover of property that was held in a trust allegedly established by

---

[1] According to Intervenor, Haifa Kaj is her married name. See [20] at 2.

Appellant's now-deceased mother, Soad Wattar, and Soad Wattar's trust was not served with notice of the motion that resulted in the turnover order. For the reasons set forth below, both of the Bankruptcy Court's November 25, 2015 orders are AFFIRMED. The Court also grants the Appellee's motion to withdraw motion to dismiss appeal of sanctions scheduling [24] and denies as moot Appellee's motion to dismiss appeal of sanctions scheduling [21].

## I.    Background

Soad Wattar ("Wattar") was the mother of Intervenor, Debtor Richard Sharif ("Debtor"), Ragda Sharifeh ("Ragda"), and other children who are not directly involved in this appeal. In 1992, Wattar allegedly established a trust called the Soad Wattar Revocable Trust of 1992 ("Trust").

The parties disagree about whether a valid Trust was ever formed and, assuming it was, which version of the trust agreement is operable. Trustee maintains that a valid trust was never formed. In the bankruptcy proceedings, Debtor originally relied on a purported trust agreement signed on May 15, 1996 (the "1996 Trust Agreement"), which (1) names Debtor as Trustee; (2) assigns and conveys to the Trustee all of Wattar's real and personal property; (3) grants the Trustee authorization to do all acts of an owner; and (4) grants the Trustee absolute discretion to litigate any claim in favor of or against Wattar's estate. See [15-1] (1996 Trust Agreement). As discussed below, Debtor subsequently asserted—and Intervenor asserts now—that the 1996 Trust Agreement was amended in 2007 to remove Debtor as Trustee and replace him with Ragda.

In 2003, Debtor, as agent for Wattar, Intervenor, and Ragda, brought suit against Wellness International Network, Ltd., Win Network Inc., and a handful of individual defendants (collectively, "WIN") in the District Court for the Northern District of Texas. Debtor alleged fraud, RICO, and other claims and sought nearly $1 million in damages. Debtor did not serve

initial disclosures, did not conduct any discovery, and failed to respond to WIN's discovery requests. The court granted summary judgment for WIN because the facts deemed to be admitted as a consequence of Debtor's default on his discovery obligations negated all of his claims and Debtor failed to introduce any affirmative evidence to support his claims. The Fifth Circuit affirmed. See *Sharif v. Wellness Int'l Network, Ltd.*, 273 F. App'x 316 (5th Cir. Apr. 8, 2008). On remand, the district court awarded WIN $655,596.13 as a sanction against Debtor. See *Sharif v. Wellness Int'l Network, Ltd*., 2008 WL 2885186, at *1 (N.D. Tex. July 22, 2008). Debtor failed to respond to post-judgment discovery, even after ordered to do so by district court. Therefore, the district court granted WIN's motion for civil contempt. See [5-2] at 8.

Two weeks later, on February 24, 2009, Debtor filed Bankruptcy Case No. 09-BK-05868 in the Bankruptcy Court for the Northern District of Illinois. Intervenor was listed in Schedule F as a creditor holding an unsecured nonpriority claim in the amount of $49,000 for "2004 Loans." [15-32] at 17. The Certificate of Notice dated February 27, 2009, shows that Intervenor was served notice of Debtor's filing of the bankruptcy case. [15-33] at 3 (showing service via first class mail to Haifa Kaj, 36 Revere Dr., South Barrington, IL 60010-9584).

On August 24, 2009, WIN initiated Adversary Proceeding No. 09-00770 against Debtor in the bankruptcy case, naming Debtor both individually and in his capacity as trustee of the Trust. WIN alleged that Debtor was concealing assets by holding them in the Trust's name and that the Trust was Debtor's alter ego. WIN also alleged that Debtor concealed, destroyed, or falsified records, made fraudulent and false oaths and accounts in the bankruptcy case, and failed to explain his loss of $5 million in assets that he had claimed to own when he filled out a loan application in 2002 with Washington Mutual Bank, N.A. In his answer to WIN's amended complaint, Debtor stated that he was the Trustee of the Trust.

On October 20, 2009, due to Debtor's failure to produce the requested documents, the Bankruptcy Trustee filed a Motion for Turnover of the property of the estate, which the Bankruptcy Court granted pursuant to 11 U.S.C. §§ 521(3) and 542(a). Among other things, the Bankruptcy Court ordered Debtor to turn over documentation related to the Trust. Debtor failed to comply with this order.

On March 17, 2010, Wattar died in Allepo, Syria.

On April 15, 2010 WIN filed a motion for sanctions in the adversary proceeding due to Debtor's failure to respond to discovery. See Bankruptcy Case No. 09-00770, Docket Entry 38. The Bankruptcy Court ordered Debtor to comply with all outstanding discovery requests by April 28, 2010, and warned that failure to do so would result in the entry of an order of default against him. WIN sought, among other things, documents evidencing the formation of the Trust, which they believed were critical because nearly everything Debtor owned was purported to be in the Trust. It also sought documents evidencing Debtor's alleged $291,000 in debts to his relatives, including $49,000 to Intervenor. See [5-2] at 19.

On May 13, 2010, Debtor's deposition was taken. At his deposition, Debtor produced what he said was the Last Will and Testament of his mother, Wattar, dated April 26, 2007 (the "April 26, 2007 Will") [15-6]. According to the Will, Wattar left all of her estate to the Trustee of the Trust acting at the time of her death (i.e., Debtor). *Id*. at 4, § 5.01. The Will named Debtor as executor and Ragda as successor executor of Wattar's estate. *Id*. at 5, § 8.01.[2]

---

[2] Intervenor claims on appeal that this Court should not consider the April 26, 2007 Will, because the Trustee waived any right to rely on the will by failing to raise it "as an issue in the Bankruptcy Court." [20] at 3. This argument is baseless. As the Bankruptcy Court order that Intervenor challenges here makes clear, the Trustee relied on the April 26, 2007 Will in his response to Intervenor's Rule 60(b)(4) motion, and attached a copy of the Will to his response. See [232] at 5; see also Bankruptcy Court Docket 09-5868, Docket Entry 209 at p. 9 and Docket Entry 209-6 (copy of April 26, 2007 Will).

On July 6, 2010, the Bankruptcy Court determined that Debtor had failed to comply with most of WIN's discovery requests and granted WIN's motion for sanctions. See [15-7]; see also Bankruptcy Case No. 09-05868, Docket Entry 53. The Bankruptcy Court determined, among other things, that Debtor failed to produce any documents evidencing the formation or funding of the Soad Wattar Trust. As a sanction, the Bankruptcy Court entered default judgment against Debtor and in favor of WIN in the adversary proceeding. On Count V, the Bankruptcy Court entered declaratory judgment and found that the Soad Wattar Trust was the alter ego of Debtor, because Debtor treated the Trust's assets as his own property and, therefore, it would be unjust to allow him to maintain that the Trust was a separate entity. Based on its finding that Debtor failed to meet his discovery obligations and violated 11 U.S.C. § 727, the Bankruptcy Court denied Debtor a discharge pursuant to 11 U.S.C. § 727(a)(2)-(a)(6). The Bankruptcy Court also ordered Debtor to reimburse WIN for the attorneys' fees that they incurred filing and prosecuting the sanctions motion. Intervenor was served notice that Debtor had been denied a discharge in bankruptcy. See Bankruptcy Case No. 09-05868, Docket Entry 55.

Debtor appealed the Bankruptcy Court's July 6, 2010 order to the District Court. See Case Nos. 10-cv-5303, 10-cv-5333 (Leinenweber, J.). A few weeks later, while the federal appeal was pending, Intervenor (using her married name Haifa Kaj) and her sister Ragda filed a lawsuit in the Circuit Court for Cook County, Illinois (No. 2010-CH-30432) seeking a preliminary injunction and an order compelling Wells Fargo to transfer approximately $700,000 in Trust assets to Ragda. See [15-4] (amended complaint, file-stamped July 30, 2010). In their amended complaint, Intervenor and Ragda alleged that, pursuant to an amendment made to the Trust on October 8, 2007 (the "2007 Trust Amendment"), Ragda became the successor beneficiary of the Trust at the time of Wattar's death on March 17, 2010. [15-4] at 4, ¶ 12. They

further alleged that, on July 21, 2010, Debtor resigned as the trustee of the Trust. [15-4] at 5, ¶¶ 15. They acknowledged, however, that the Bankruptcy Court had already found in its July 6, 2010 order "that the Soad Wattar Revocable Living Trust was Richard Sharif's *alter ego*." [15-4] at 3, ¶ 7. Ragda and Intervenor requested that the court enter a declaratory judgment recognizing, among other things, that Ragda is the successor trustee and successor beneficiary to the Trust and that Debtor had no legal ownership in any of the assets held in the Trust. [15-4] at 8, ¶ 1(e), (f). Ragda and Intervenor also sought a declaratory judgment that Intervenor was the sole owner of two properties, the Logan Square MRI & Diagnostic Center, Inc. and the Sharif Pharmacy, Inc. Intervenor and Ragda did *not* allege that Intervenor was the executor of her mother's estate. [15-4] at 8-9, ¶¶ 1(g), (h). On August 2, 2010, the Cook County Circuit Court denied Ragda and Intervenor's motion on the basis that the case was subject to the jurisdiction of the Bankruptcy Court. See [15-14].

On August 5, 2010, the Bankruptcy Court granted the Trustee's July 30, 2010 motion to turn certain assets of the Trust over to the Trustee. See [6-8]. Specifically, the Bankruptcy Court ordered the Hartford Financial Services Group, Inc. to convey to the Trustee all interest in any life insurance policies issued by any Hartford Insurance entity related to the Debtor, Wattar or the Trust. The Bankruptcy Court also ordered Wells Fargo Financial Advisors to convert the owners in two specified accounts from the Trust to the Trustee. In addition, because Wattar transferred all of her assets to the Trust, the Bankruptcy Court ordered Debtor to turn over all interest in any assets related to Debtor, Wattar, or the Trust. The Bankruptcy Court further ordered Debtor, Ragda, and Intervenor to cease any act to exercise any control over property of the estate. [6-8] at 2, ¶ D.

Debtor appealed to the District Court. While the appeal was pending, Ragda filed an adversary complaint in Debtor's bankruptcy case, attempted to intervene in the main bankruptcy case, and filed new cases in the District Court and the Cook County Circuit Court, all in an attempt to challenge the Bankruptcy Court's July 6, 2010 order. All of Ragda's efforts were ultimately unsuccessful. On February 10, 2012, Judge Leinenweber, considering the consolidated appeals filed by Debtor and Ragda, affirmed the Bankruptcy Court orders declaring Debtor in default, denying Debtor a discharge, and finding that the Trust was the property of the bankruptcy estate. See Case No. 11-cv-8811, Docket Entry 16.

On August 21, 2013, the Seventh Circuit affirmed in part and reversed in part Judge Leinenweber's February 10, 2012 order. See *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751 (7th Cir. 2013). The Seventh Circuit affirmed "the portion of the district court's judgment affirming the bankruptcy court's entry of default judgment denying discharge of Sharif's debts," but reversed "[t]he portion of the district court's judgment affirming the bankruptcy court's entry of default judgment on WIN's alter-ego claim" and ordered the bankruptcy court to recalculate its fee awards. *Id*. at 782. The Seventh Circuit explained that the Bankruptcy Court did not have constitutional authority to enter final judgment on the creditors' alter-ego claim, because it was a state-law claim between private parties that was wholly independent of federal bankruptcy law and could not be resolved in the claims-allowance process. *Id.* at 775-76.

The Supreme Court granted WIN's petition for writ of certiorari. See *Wellness Int'l Network, Ltd. v. Sharif*, 134 S. Ct. 2901 (2014). While the cert petition was pending, Ragda's attorney, Garrett S. Reidy, filed a motion with Judge Leinenweber to withdraw as Ragda's counsel pursuant to Rule 3.3(b) of the Illinois Rules of Professional Conduct, which requires a lawyer who knows that his client intends to, has, or is engaging in criminal or fraudulent actions

in the proceeding to take remedial measures, including disclosure to the tribunal if necessary. Mr. Reidy asserted that in March 2014 he received information which called into doubt whether the Trust had, in fact, been amended on October 8, 2007. Mr. Reidy expressed concern that the purported 2007 Trust Amendment was actually "created and executed sometime *after* Richard Sharif filed for Chapter 7 bankruptcy protection in February of 2009." [15-30] at 3. He asked Ragda and Debtor to provide him with evidence that this was not so, and they failed to do so.

The Supreme Court reversed the Seventh Circuit's judgment that the Bankruptcy Court lacked constitutional authority to enter final judgment on the creditors' alter-ego claim. The Court held that Article III permits bankruptcy courts to adjudicate *Stern* claims—that is, claims designated for final adjudication in the bankruptcy court as a statutory matter but prohibited from proceeding in that way as a constitutional matter—with the parties' knowing and voluntary consent. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (U.S. 2015).

The case was remanded to the Seventh Circuit. On January 13, 2015, Debtor's attorney, William Stevens, filed a motion to withdraw as counsel for Debtor. See [15-31]. Mr. Stevens referred to Mr. Reidy's motion to withdraw and explained that Debtor failed to produce to him any evidence that the purported 2007 Trust Amendment had been executed before Debtor filed for bankruptcy. Mr. Stevens attached to his motion a declaration from the notary public whose name is stamped on the first page of the amendment, Stacy Franceschi. See [15-31] at 5-6. Ms. Franceschi stated that sometime in 2009 she notarized the first page of the purported 2007 Trust Amendment. By affixing her signature to the amendment, she attested that she witnessed Debtor affix his signature to the amendment on October 8, 2007. However, according to her declaration, Ms. Franceschi did so only because she was "advised by Richard Sharif that the reason both of these Exhibits were being back-dated to October 8, 2007 was because two (2) identical

amendments made to the Trust which were actually executed on October 2, 2007 were lost and could not be replaced because one of the persons who served as a witness had died and that the other person who served as a witness had returned to live in Syria." [15-31] at 5, ¶ 5. When Franceschi notarized the amendment, it consisted of one page. *Id.* at 6, ¶ 8. When Sharif filed the amendment with the Seventh Circuit, it contained two pages. The second page of the document states that Notary Public Maria Gaud witnessed Debtor, Ms. Franceschi, and Edward Bontkowski affix their signatures on the first page; however, according to Ms. Franceschi, Maria Gauid was not present during and did not witness the others' signatures. *Id.* at 5-6, ¶ 7.

On July 8, 2015, Debtor sent a letter to the Seventh Circuit stating that Mr. Stevens no longer represented him in the appeal and requesting that the Court provide "pro bono assistance." [15-25] at 1. Debtor also asserted that "[o]ne piece of evidence [that his attorney] failed to provide or disclose was that I was no longer the trustee [of the Trust] after 2007, revoked by my mother, Soad Wattar and her attorney." *Id.* Debtor attached a copy of the 2007 Trust Amendment, which purported to show that on November 1, 2007, Debtor resigned as Trustee and Ragda took over as Successor Trustee. *Id.* Debtor's allegations directly contradicted his earlier representations to the Bankruptcy Court and appellate courts that he was the Trustee of the Trust at the time he filed for bankruptcy.

On July 24, 2015, the Seventh Circuit granted Stevens' motion to withdraw as counsel and denied Debtor's request for pro bono assistance, which it construed as a motion to recruit counsel. See Seventh Circuit Case No. 12-1349, Docket Entry 56. On August 4, 2015, the Seventh Circuit determined that Debtor forfeited any *Stern* argument by waiting until his Seventh Circuit reply brief to challenge the Bankruptcy Court's authority to decide the alter ego claim. See *Wellness Int'l Network, Ltd. v. Sharif*, 617 F. App'x 589, 590-91 (7th Cir. 2015).

Therefore, the Seventh Circuit affirmed the Bankruptcy Court's July 6, 2010 decision on Count V, *id.* at 591, which found that the Soad Wattar Trust was the alter ego of Debtor. The Seventh Circuit also reinstated the Bankruptcy Court's award of fees to WIN. *Id.* at 591.

Two days after the Seventh Circuit issued its opinion, Salem filed a notice of appearance on Debtor's behalf and a petition for rehearing. See Seventh Circuit Case No. 12-1349, Docket Entry 60. Debtor argued that rehearing should be granted because (1) the record shows that he made a timely objection in the District Court to the Bankruptcy Court's authority to decide the alter-ego claim, and (2) Debtor did not have a sufficient opportunity to present this record to the Seventh Circuit. The Seventh Circuit denied Debtor's petition for rehearing on August 21, 2015. See Seventh Circuit Case No. 12-1349, Docket Entry 61.

Less than a month later, on September 12, 2015, Intervenor, purportedly as Executrix of Wattar's estate, filed a motion for order vacating the Bankruptcy Court's August 5, 2010 turnover order pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure. Salem was Intervenor's attorney. Intervenor asserted that Ragda became the Trustee of the Trust on November 1, 2007 and attached a copy of the 2007 Trust Amendment. Intervenor argued that the Estate was never served with process and therefore (1) the Bankruptcy Court did not have personal jurisdiction over Wattar's Estate and (2) the Bankruptcy Court's August 5, 2010 order requiring the turnover of property held in the Trust was void.

In her reply brief, Intervenor attached for the first time documents purporting to be copies of the most recent version of Wattar's will, dated April 28, 2007 (the "April 28, 2007 Will"). See [20] at 2-3; see also [6-12] at 25-56. Intervenor produced two purported translations of the April 28, 2007 Will (one made in Chicago and one made in Amman, Jordan) and an "Affidavit of Syrian Attorney for the Estate of Soad Wattar." See [6-12] at 25-56 (Exs. T, U, V). The April

28, 2007 Will purports to name Intervenor as Executrix of Wattar's estate and to leave all of Wattar's assets to the Executrix. The copy of the April 28, 2007 Will is not authenticated. It is supported only by a declaration of Salem that the document is "true and correct to the best of [his] knowledge." Bankruptcy Case No. 09-05868, Doc. 228 at 2. Intervenor claimed that (1) she became the executrix of Wattar's estate when Wattar died on March 17, 2010, (2) Wattar's estate was being probated in Syria, (3) she was therefore entitled to notice before the Bankruptcy Court ordered the turnover of property of Soad Wattar to the bankruptcy estate on August 5, 2010, and (4) because she did not receive notice, the Bankruptcy Court's order violated Due Process and is void. Intervenor also alleged that Ragda had been the trustee of the Trust since 2007.

On September 15, 2015, Intervenor filed a "motion to recuse" Bankruptcy Court Judge Cox pursuant to 28 U.S.C. §§ 144 and 455. See [6-9]. In the motion, Intervenor argued that recusal was mandatory under 28 U.S.C. § 144 because Judge Cox "expressed her belief in the professional incompetence" of Intervenor's attorney, Salem, and also disparaged "his personal and ethical behavior" by holding him in contempt and imposing a fine of $10,000 a day on him in an unrelated bankruptcy case, *In re Morris Senior Living, LLV*, Case No. 12-bk-5364. [6-9] at 4.[3] In his three-paragraph "Sworn Statement" in support of his motion, Salem stated that "Judge Cox publicly expressed her personal dissatisfaction with [him], attacked [his] integrity and held [him] in contempt, with a $10,000 per day fine." [6-9] at 3. Therefore, Salem alleged, Judge Cox "is bias or prejudice [sic] against [him] where, at the very least, there is no appearance of partiality when Judge Cox is dealing with [him]." *Id.*

---

[3] In the *Morris* case, the District Court, Judge Kennelly, reversed the Bankruptcy Court's order finding Salem in contempt and sanctioning him. See *In re Morris Senior Living, LLC*, No. 13 C 2064, 2013 WL 5753834, at *9 (N.D. Ill. Oct. 22, 2013).

The Bankruptcy Court denied both of Intervenor's motions. Judge Cox determined that she was not required to recuse herself because "the fact that th[e] Court previously held Mr. Salem in contempt . . . alone is not a sufficient basis for a recusal motion." [5-1] at 4 (citing *Grove Fresh Distributors, Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 640 (7th Cir. 2002)).

The Bankruptcy Court denied Intervenor's Rule 60(b)(4) on the basis that Intervenor failed to provide any "evidence or information that the property of the bankruptcy estate dealt with in the August 5, 2010 Order belonged to a person or entity not then before the Court." [5-2] at 5. The Bankruptcy Court also noted that, "[i]f movant Haifa Sharifeh is Haifa Kaj who was scheduled as an unsecured creditor on the Debtor's Schedule F as a creditor owed $49,000, she had notice of the bankruptcy case as shown by the bankruptcy Noticing Center's Certificate of Service at dkt. no. 9, dated February 25, 2009." *Id.* Judge Cox further explained that the April 26, 2007 Will submitted by the Trustee (which Debtor provided to the Trustee at his deposition) (1) transferred all of Soad Wattar's property to the Trust, which was held pursuant to a default judgment to be the alter ego of Debtor; and (2) did not name Haifa Kaj as its executrix.

Intervenor filed a notice of appeal on November 30, 2015. Intervenor raises the following issues on appeal ([5] at 5):

1. Whether the bankruptcy court erred in denying Appellant's Motion to Recuse pursuant to 28 U.S.C. § 455(a), which requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned"; and

2. Whether the bankruptcy court's August 5, 2010, Order is void because the court lacked personal jurisdiction over the owner of the property that was transferred to the bankruptcy estate.

While this appeal was pending, Salem moved to withdraw from representing any parties in the Bankruptcy Case on the basis that the Bankruptcy Court's April 25, 2016 order to show cause against Salem, Intervenor, and Ragda placed Salem in conflict with his clients. See N.D.

Ill. Bankruptcy Case No. 09-05868, Docket Entry 287, at 3.  Judge Cox granted Salem's motion

on July 12, 2016.  N.D. Ill. Bankruptcy Case No. 09-05868, Docket Entry 289.  Therefore, Salem

is no longer Intervenor's attorney in the underlying bankruptcy case.  However, Salem has not

sought leave to withdraw as counsel in the instant appeal.

## II.     Analysis

### A.     Intervenor's Motion to Recuse

In his notice of appeal, Intervenor asserted that Bankruptcy Judge Cox committed

reversible error by refusing to recuse herself pursuant to 28 U.S.C. § 455(a).  See [5] at 3.

Section 455(a) provides that "[a]ny justice, judge, or magistrate judge of the United States shall

disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

"'Section 455(a) asks whether a reasonable person perceives a significant risk that the judge will

resolve the case on a basis other than the merits,'" which is "'an objective inquiry.'"  *Hook v.

McDade*, 89 F.3d 350, 354 (7th Cir. 1996) (quoting *In re Mason*, 916 F.2d 384, 385-86 (7th Cir.

1996)).  This standard examines "how things appear to the well-informed, thoughtful observer

rather than to a hypersensitive or unduly suspicious person."  *Id.*

The Supreme Court has opined that, under Section 455(a), "judicial rulings alone almost

never constitute a valid basis for a bias or partiality motion."  *Liteky v. United States*, 510 U.S.

540, 555 (1994).  Nor, in the typical case, do "opinions formed by the judge on the basis of facts

introduced or events occurring in the course of the current proceedings, or of prior proceedings[]

. . . constitute a basis for a bias or partiality motion *unless they display a deep-seated favoritism

or antagonism that would make fair judgment impossible*."  *Id.* (emphasis added).  "Thus,

judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to,

counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge," but

"*may* do so if they reveal an opinion that derives from an extrajudicial source," and "*will* do so if

they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* (emphases in original). For example, it was inappropriate for the district court judge in *Berger v. United States,* 255 U.S. 22, 41 (1921), a World War I espionage case against German–American defendants, to state: "'One must have a very judicial mind, indeed, not [to be] prejudiced against the German Americans' because their 'hearts are reeking with disloyalty.'" *Id.* By contrast, "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality, because they "are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display." *Id.* at 555-56. Thus, "[a] judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* at 556.

Although Intervenor raised only Section 455(a) in her notice of appeal, in her opening brief she also argues that recusal should have been granted pursuant to 28 U.S.C. § 144. Recusal shall be granted under Section 144 when a party "makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party." *Id.* The supporting affidavit must "state the facts and the reasons for the belief that bias or prejudice exists," and must be "accompanied by a certificate of counsel of record stating that it is made in good faith." *Id.* The affidavit's "factual allegations must fairly support the charge of bias or impartiality and must be specific—including definite times, places, persons, and circumstances." *Hoffman v. Caterpillar, Inc.*, 368 F.3d 709, 718 (7th Cir. 2004).

The Court's review of the Bankruptcy Court's denial of Intervenor's motion to recuse is *de novo*, because Intervenor raised the issue in the Bankruptcy Court in a motion supported by a sworn statement. See *United States v. Lara-Unzueta*, 735 F.3d 954, 958 & n.6 (7th Cir. 2013);

*United States v. Balistrieri,* 779 F.2d 1191, 1202 (7th Cir. 1985). The Bankruptcy Court judge is "presumed to be impartial." *United States v. Sidener*, 876 F.2d 1334, 1336 (7th Cir. 1989). Section 144 is "strictly construed, and there is a heavy burden on the party seeking recusal to comply with its requirements." *United States v. Hanhardt*, 134 F. Supp. 2d 972, 977 (N.D. Ill. 2001).

According to Intervenor, "[a] reasonable person cannot be convinced" that Judge Cox "would not be bias [sic] against Salem" because Judge Cox held Salem in contempt and fined him $10,000 per day in an earlier, unrelated bankruptcy case, *In re Morris Senior Living, LLV*, Case No. 12-bk-5364. According to Intervenor, Judge Cox's opinion "made public her personal opinion against Salem and attacked his integrity." [5] at 12. Intervenor does not offer any explanation of what *In re Morris Senior Living* was about or why Judge Cox found him in contempt or fined him in that case, but notes that the district court to which an appeal was taken "vacated the contempt order." [5] at 5.

Considering Intervenor's argument for recusal *de novo*, the Court concludes that Intervenor failed to establish that Judge Cox's partiality can reasonably be questioned and, therefore, Judge Cox properly denied Intervenor's motion for recusal. Just as a judge must conscientiously step aside when valid grounds for recusal are presented, so too does a judge have an obligation *not* to recuse herself when there is no occasion to do so. *Hoffman*, 368 F.3d at 717. Here, the only evidence of alleged bias presented by Intervenor is Judge Cox's decision—which was overturned on appeal to the District Court—to hold him in contempt and fine him $10,000 per day in the unrelated *In re Morris Senior Living* bankruptcy. As an initial matter, Intervenor has offered no legal support for her argument that a judge's alleged bias against a party's *attorney* should be imputed to the party.

Moreover, even assuming that Judge Cox's alleged bias against Intervenor's counsel should be imputed to Intervenor, Intervenor's motion and Salem's supporting "Sworn Statement" do not discuss the facts of the *Morris Senior Living* litigation or explain why Judge Cox's decision to impose a fine demonstrates "deep-seated . . . antagonism" toward Salem. *Liteky*, 510 U.S. at 555. They do not describe any "times, places, persons, [or] circumstances" that would support Intervenor's charges of alleged bias and impartiality. *Hoffman*, 368 F.3d at 718. Nor is Salem's "Sworn Statement" "accompanied by a certificate . . . stating that it is made in good faith," as required by section 144. See 28 U.S.C. § 144.

Furthermore, while Judge Kennelly reversed Judge Cox's contempt order in *In re Morris*, Judge Kennelly did not make any findings suggesting that Judge Cox had any "deep-seated . . . antagonism" toward Salem or was otherwise biased on prejudiced. *Liteky*, 510 U.S. at 555. Instead, Judge Kennelly reversed Judge Cox based on his findings that: (1) "Salem took reasonable steps to comply with the bankruptcy court's order requiring dismissal of [a related state-court] suit"; and (2) the Bankruptcy Court's other contempt findings were conclusory. *In re Morris Senior Living, LLC*, No. 13-cv-2064, 2013 WL 5753834, at *9 (N.D. Ill. Oct. 22, 2013). Judge Kennelly remanded the case to Judge Cox for further proceedings, without expressing any hesitation about her ability to be fair and impartial in the ongoing bankruptcy proceeding.

In short, Intervenor's conclusory arguments suggest, at most, that Judge Cox was critical of Intervenor's counsel's actions in representing a client in a prior, unrelated bankruptcy. This by itself is insufficient to demonstrate that recusal is required. See *Liteky*, 510 U.S. at 555; see also *Hopkins v. Springfield Hous. Auth.*, 592 F. App'x 528, 530 (7th Cir. 2015) ("unfavorable rulings alone will almost never suffice to establish judicial bias or misconduct"); *Grove Fresh*

*Distributors, Inc. v. John Labatt, Ltd.*, 299 F.3d 635, 641 (7th Cir. 2002) ("judicial rulings are grounds for appeal, not recusal"). Based on the showing made by Intervenor, the Court concludes that an informed, thoughtful observer would not believe that Judge Cox's contempt ruling against Salem in *In re Morris Senior Living* posed a significant risk that Judge Cox would decide *In re Sharif* on some basis other than its merits. See *Hook*, 89 F.3d at 354. Therefore, Judge Cox's denial of Intervenor's motion to recuse is AFFIRMED.

**B.      Intervenor's Motion to Vacate the Bankruptcy Court's August 5, 2010 Turnover Order**

**1.      Legal Standards**

Intervenor moved to vacate the Bankruptcy Court's August 5, 2010 turnover order pursuant to Rule 60(b)(4) of the Federal Rules of Civil Procedure on the basis that the Bankruptcy Court lacked personal jurisdiction over the property held in the Trust. Rule 60(b)(4) provides that, "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding [if] the judgment is void." Fed. R. Civ. P. 60(b)(4). "Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010) (quoting *Nemaizer v. Baker*, 793 F.2d 58, 65 (2d Cir. 1986)).

The Court "review[s] the denial of most motions for relief under Rule 60(b) only for an abuse of discretion." *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 854 (7th Cir. 2011). However, "[t]he standard of review for denial of a Rule 60(b)(4) motion is less deferential," because "[a] court has no discretion to deny a Rule 60(b)(4) motion to vacate a judgment entered against a defendant over whom the court lacks personal jurisdiction, regardless of the specific

reason such jurisdiction is lacking." *Id.* at 854-55. In general, "[a] motion under Rule 60(b) must be made within a reasonable time." Fed. R. Civ. P. 60(c)(1). But in the case of a motion brought under Rule 60(b)(4), if the movant "did not appear to challenge the district court's [or bankruptcy court's] jurisdiction, then [the movant can] bring [its] Rule 60(b)(4) motion at any time." *Philos*, 645 F.3d at 857; see also 11 Fed. Prac. & Proc. Civ. § 2862 (3d ed.).[4]

Neither party addresses who bears the burden of proof under Rule 60(b)(4). Typically, the plaintiff (or in this case the Trustee) would bear the burden of establishing jurisdiction over the defendant (or in this case the Intervenor). However, when the movant who files a Rule 60(b)(4) motion received timely notice of a lawsuit and let the case go to judgment without appearing and contesting jurisdiction, the movant bears the burden of proving that the ruling court lacked personal jurisdiction over her. See *Bally Exp. Corp. v. Balicar, Ltd.*, 804 F.2d 398, 401 (7th Cir. 1986) ("If the defendant, after receiving notice, chooses to let the case go to a default judgment, the defendant must then shoulder the burden of proof when the defendant decides to contest jurisdiction in a postjudgment rule 60(b)(4) motion."); see also *Philos*, 645 F.3d at 855–57; *Carr v. Pouilloux, S.A.*, 947 F. Supp. 393, 395 (C.D. Ill. 1996); *Chase Int'l, Inc. v. Link & Pan of Texas, Inc.*, No. 94 C 6533, 1995 WL 506056, at *1 (N.D. Ill. Aug. 17, 1995).

In this case, it is clear that Intervenor received timely notice of Debtor's bankruptcy proceeding. Intervenor was served with notice of Debtor's filing of the bankruptcy case ([15-33] at 3), and was also served with notice of the meeting of creditors (Bankruptcy Case No. 09-05868, Docket Entry 9 (2/25/09)), notice fixing the time for filing claims (Bankruptcy Case No. 09-05868, Docket Entry 17 at p. 5), and notice that Debtor had been denied a discharge in bankruptcy (Bankruptcy Case No. 09-05868, Docket Entry 55). Most importantly here,

---

[4] For this reason, the Court cannot accept the Trustee's argument that Intervenor failed to timely file her Rule 60(b)(4) motion.

Intervenor also had actual notice of the Bankruptcy Court's order finding that the Trust was Debtor's alter ego. The August 5, 2010 turnover order was predicated directly on that finding. Plaintiff's knowledge of the Bankruptcy Court's alter ego finding is demonstrated by the amended complaint that Intervenor and her sister Ragda filed in Cook County Case No. 2010-CH-30432. In that action, she recognized that the Bankruptcy Court's July 6, 2010 order "found that the Soad Wattar Revocable Living Trust was Richard Sharif's *alter ego*" and that the Trustee was seeking the turnover of funds held in the Trust. [15-4] at 3, ¶¶ 7-8. Notably, Intervenor never claimed to be the executrix of her mother's estate or mentioned the April 28, 2007 Will.

Given this history, the Court concludes that this case is analogous to the situation where a party allows a case to go to default judgment against her, and then seeks to contest jurisdiction through a Rule 60(b)(4) motion. Under these circumstances, it is appropriate for Intervenor to bear the burden of proof. But even if that ruling were incorrect, the disposition of this appeal would be unaffected, because Intervenor loses regardless of who bears the burden of proof. Assuming that the Trustee has the burden of proof, he established that the Bankruptcy Court had jurisdiction over the property in the Trust by presenting evidence that Debtor was the Trustee of the Trust and that the Trust was Debtor's alter ego. The Bankruptcy Court agreed, and its decision was affirmed on appeal. As explained in the following section, Intervenor fails to offer any competent evidence that these decisions were wrong.

### B. Merits

Intervenor's first argument is that the Bankruptcy Court did not have personal jurisdiction over Wattar or her estate because there was no service of process on Wattar and thus no notice, which violates due process. [5] at 15. However, Intervenor provides no legal support for her

argument that the settlor of a trust is entitled to notice, and no discussion whatsoever about how personal jurisdiction over an estate may be established or the requirements of due process. Therefore, these arguments are waived. See, e.g., *Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("'perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues)'" (quoting *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991)); *Silk v. Bd. of Trustees, Moraine Valley Cmty. Coll., Dist. No. 524*, 795 F.3d 698, 709 (7th Cir. 2015) ("'[t]he absence of any supporting authority or development of an argument constitutes a waiver on appeal'" (quoting *Kramer v. Banc of Am. Sec., LLC,* 355 F.3d 961, 964 n. 1 (7th Cir. 2004)); *Ball v. City of Indianapolis*, 760 F.3d 636, 645 (7th Cir. 2014) (arrestee waived argument on appeal that District Court erred in finding that Indiana law did not recognize a civil remedy in the form of monetary damages for Indiana constitutional violations, where arrestee failed to cite any supporting authority or otherwise develop that argument in her appellate brief).

In any event, even if Intervenor had not waived her arguments, she fails to demonstrate that they have any merit. Judge Cox found that it is the *trustee*, not the settlor of the Trust, see *In re Sharif*, 457 B.R. 702, 725 (Bankr. N.D. Ill. Aug. 30, 2011), who is entitled to notice, and Intervenor does not challenge Judge Cox's reasoning or allege to have ever been the trustee of the Trust. Instead, Intervenor argues that *Ragda*, rather than Debtor, was the Trustee at the time Debtor filed for bankruptcy. Intervenor's argument is based on the 2007 Trust Amendment, which purported to remove Debtor as the Trustee and replace him with Ragda in 2007. The Seventh Circuit already rejected Debtor's attempt to rely on the 2007 Trust Agreement, and Intervenor therefore has an insurmountable hill to climb in arguing to this Court that the Seventh Circuit erred. See *Sierra Club v. Khanjee Holding (US) Inc.*, 655 F.3d 699, 704 (7th Cir. 2011)

("Matters decided on appeal become the law of a case to be followed on a second appeal, unless there is plain error of law in the original decision.").

The 2007 Trust Amendment is not properly authenticated and there are strong indications that it was not signed until after Debtor filed for bankruptcy. "To be admissible, documentary evidence must be supported by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Renta v. Cty. of Cook*, 735 F. Supp. 2d 957, 967 (N.D. Ill. 2010) (quoting Fed. R. Evid. 901(a)). "Documents that are not authenticated are properly excluded." *Id.* The notary public who notarized the 2007 Trust Amendment, Stacy Franceschi, submitted a sworn declaration that she did not notarize the document until 2009, and that the document was back-dated. Intervenor has presented no other evidence suggesting that the 2007 Trust Amendment was, in fact, signed in 2007. While Ms. Franceschi's declaration notes that Debtor told her that the 2007 Trust Amendment had to be backdated because the originals were lost, Intervenor has not provided a declaration or any other competent evidence suggesting that Debtor's statement to Ms. Franceschi was true. Additionally, the attorneys who formerly represented Debtor and Ragda in the bankruptcy proceeding, Garrett S. Reidy and William J. Stevens, withdrew from their representation of Debtor and Ragda to prevent a fraud on the court based on (1) their concern that the 2007 document was in fact created and executed sometime after Debtor filed for bankruptcy protection in February 2009 and (2) their clients' failure to provide any proof that the document was signed in 2007. See [15-30], [15-31]. On this record, the Court cannot accept Intervenor's assertion that the 2007 Trust Amendment changed the trustee of the Trust from Debtor to Ragda.

Intervenor's second argument is that, as the Executrix of Wattar's estate upon Wattar's death in March 2010, she was entitled to notice of the turnover motion that resulted in the August

5, 2010 turnover order. This argument is based on (1) a declaration from a Syrian attorney, Majd Serieh, that a court order was entered by a Syrian court on March 30, 2010 establishing the estate of Soad Wattar; and (2) the purported April 28, 2007 Will, which Intervenor brought up for the first time in her reply brief in the bankruptcy court and which purports to name Intervenor as Executrix. See Case 09-05868, Docket Entry 228, Exs. T, U, V. The Court concludes that Judge Cox properly rejected this argument on the basis that Mr. Serieh's declaration fails to attach the Syrian court order that purports to establish the Estate of Soad Wattar. While Intervenor claims that this document is unavailable due to war in Syria—and flippantly suggests that the Trustee travel to Syria to negotiate with ISIS for the release of the original document—Intervenor's assertion that a copy of the document is unavailable is not backed up by a sworn declaration and is inconsistent with Mr. Serieh's statement in his declaration that a copy of the document is attached. Judge Cox properly found that Mr. Serieh's declaration is insufficient to establish that Wattar's estate was established in Syria in 2010. See [232] at 5. Moreover, Intervenor waived her right to rely on the purported April 28, 2007 Will by waiting to raise it in her reply brief in the Bankruptcy Court. See, e.g., *In re Meier*, 537 B.R. 880, 884 (Bankr. N.D. Ill. 2015) (citing *Mendez v. Perla Dental,* 646 F.3d 420, 423–24 (7th Cir. 2011)). Ultimately, the April 28, 2007 Will is irrelevant because pursuant to the 1996 Trust Agreement, all of Wattar's property was placed in the Trust, only the Trustee was entitled to notice, and Intervenor was not and does not claim to be the Trustee.

Finally, the Court concludes that even if Intervenor were able to establish the authenticity of the documents on which she relies, Intervenor has failed to demonstrate that her right to due process has been violated. Intervenor's brief is devoid of any legal argumentation on this point, and it is therefore waived. See, e.g., *Crespo*, 824 F.3d at 674. Moreover, even if this argument

had not been waived, the Seventh Circuit has recognized that a creditor's informal actual knowledge of a pending bankruptcy case may be sufficient to satisfy due process. See *In re Pence*, 905 F.2d 1107, 1109 (7th Cir. 1990) (mortgagee was not entitled to avoid binding effects of Chapter 13 reorganization plan, even if mortgagee failed to receive written notice of confirmation hearing, where mortgagee had knowledge of debtor's bankruptcy petition and should have known that reorganization plan would have to be filed within 15 days of petition); see also *In re O'Shaughnessy*, 252 B.R. 722, 732–33 (Bankr. N.D. Ill. 2000) (recognizing that "[a]ctual notice of the bankruptcy proceeding may . . . constitute reasonable notice for purposes of due process," for instance if "the creditor receives notice adequate enough to afford it an opportunity to file a complaint or seek to extend the time for filing a complaint for dischargeability"); *In re S.N.A. Nut Co.*, 198 B.R. 541, 544 (Bankr. N.D. Ill. 1996) ("In cases under Chapter 7 or Chapter 13 of the Code, actual knowledge without notice of the bankruptcy by a creditor whose existence is known to the debtor will satisfy due process concerns with respect to treatment of its claim."). While Intervenor seeks to assert her rights as an executrix, rather than a creditor, the reasoning of these cases is equally applicable to Intervenor (who, in fact, was also a creditor of Debtor). As discussed above, Intervenor received actual, timely notice of Debtor's bankruptcy and the Bankruptcy Court's decision that the Trust was Debtor's alter ego and therefore all of the assets in the Trust should be included in the bankruptcy estate. Thus, the Court concludes that Intervenor has failed to demonstrate that she is entitled to avoid the effects of the Bankruptcy Court's August 5, 2010 turnover order on due process grounds.

For these reasons, the Court concludes that the Bankruptcy Court properly denied Intervenor's Rule 60(b)(4) motion. The Bankruptcy Court's order is AFFIRMED.

**IV.    Conclusion**

For the foregoing reasons, the Bankruptcy Court's November 25, 2015 orders denying Intervenor's motion to recuse [5-1] and Intervenor's Rule 60(b)(4) motion [5-2] are both AFFIRMED.  The Court also grants the Appellee's motion to withdraw motion to dismiss appeal of sanctions scheduling [24] and denies as moot Appellee's motion to dismiss appeal of sanctions scheduling [21].

Dated: September 26, 2016

Robert M. Dow, Jr.
United States District Judge